**AMERICAN ENCAUSTIC TILING CO., Inc., et al. v. PACIFIC TILE & PORCELAIN CO. et al.**

**No. 646.**

District Court, S. D. California, Central Division.

Sept. 27, 1939.

Townsend & Hackley, of San Francisco, Cal., for plaintiffs.

J. Calvin Brown, of Los Angeles, Cal., for defendants.

HOLLZER, District Judge.

This is a suit charging infringement of a patent issued May 17, 1927 to Messrs. Theodore C. and Willis O. Prouty for ceramic process and products. At the suggestion and upon stipulation of counsel for the respective parties this cause was referred to the late Hon. Benjamin F. Bledsoe as Special Master. The report filed by the Master comprises some 31 pages, together with certain findings and conclusions drafted by plaintiffs' counsel at the Master's request. A copy of such report in draft form, also the proposed findings and conclusions, had been served upon defense counsel many weeks prior to the signing and filing of said report.

To the Master's draft report defendants interposed exceptions and objections, 26 in number, some to the effect that they excepted to certain findings made by the Master, others to the effect that they excepted to the failure of the Master to find in accordance with the contentions advanced by defendants, still others to the effect that the Master erred in substituting comment and generalities for appropriate specific findings and in that his report should have set forth the substance of the testimony with page references to the record and should have stated the facts found separately, with precision and certainty, and finally that defendants excepted to the Master's conclusions. About ten days after submitting such exceptions and objections, defendants' counsel presented a 5 page document in which at some length they reiterated the position taken by them in said exceptions and objections.

The hearing before the Master occupied many weeks. The record of that hearing is set forth in a reporter's transcript totalling

several thousand pages, and in addition, includes approximately 400 exhibits, of which several are charts and compilations. Upon the conclusion of the taking of evidence counsel for the respective litigants served and filed with the Master voluminous briefs, wherein they set forth their views respecting the evidence and also discussed various points of law, citing a number of authorities. Defendants' brief before the Special Master alone comprises 370 printed pages.

The major points advanced in that brief were as follows:

1. Plaintiffs failed in their proofs to make prima facie case of infringement against the defendants.

2. The Prouty patent in suit does not comply with Section 4888, U.S.R.S., 35 U.S.C.A. § 33.

3. The patent in suit states no invention and solves no problem over that taught by the prior art publications and patents.

4. The patent in suit is invalid as stating no invention in the use of kilns adapted to maintain a given temperature.

5. The patent in suit is invalid because of prior public use of the bisque mixture.

6. If plaintiffs attempt to stretch the teachings of Prouty to include a broad range of equivalency, such as would include the defendants' practice, then the Prouty patent is invalid as anticipated by the Wade encaustic tile and the Inglewood prior public use.

While a half dozen publications are referred to as establishing anticipation through prior art publications, that defense evidently is deemed to have such little importance that less than 3 pages of defendants' brief before the Master are devoted to any argument thereon, and even that consists of hardly more than a skeleton outline. Likewise while an exceedingly large number of patents were introduced in evidence in support of the defense of anticipation through prior patents, this contention also evidently possessed such little merit that the discussion thereof was limited in defendants' brief to about seven pages of a skeleton form of argument plus approximately eleven pages of selected excerpts from the testimony of defendants' principal expert witness.

Although about three fourths of that brief are devoted to a discussion of various portions of the evidence, the fact remains that such parts of the testimony as support plaintiffs' contentions, including important admissions elicited from defendants' witnesses on cross examination, either are ignored entirely or are discussed rather superficially.

In answer to defendants' brief plaintiffs filed a closing brief, wherein they discussed each of the defenses raised, also pertinent parts of the evidence, and, in addition, reexamined the several contentions upon which plaintiffs relied. This closing brief was accompanied by a 158 page document comprising a consolidated topical index of the highlights of the record. This latter document is comprehensive, well prepared, and its accuracy is not subject to successful challenge.

The report of the Special Master, which is subdivided under general headings of the Prouty patent, invalidity, anticipation and infringement, discusses each of the defenses which merit examination. The conclusions therein reached by the Master are to the effect that the patent in suit has not been anticipated, that the same is valid, and that certain claims of said patent have been infringed by the defendants. Even assuming that this report might be regarded as being incomplete in some particulars, the latter certainly are supplied by the detailed recitals set forth in the proposed findings and conclusions which the Master has submitted in conjunction with his report. To this report defendants have filed with this court some twenty exceptions.

It is a matter of common knowledge that the late Judge Bledsoe, who acted as Special Master herein at the request of both sides, served with outstanding ability and exceptional industry for many years as a judge of this court. During the course of his distinguished career on this bench he had decided many patent causes. Regardless of these circumstances, and irrespective of the presumptions and principles applicable when considering exceptions to a Master's report, nevertheless, because of repeated and persistent assertions on the part of defense counsel to the effect that the Master had suffered from an illness which it was felt had interfered with his giving the case proper consideration, this court has been led to devote more time and study to the present suit than ordinarily need be given to a review of exceptions to a Master's report.

In lieu of an oral argument upon the aforementioned exceptions, counsel have furnished to the court comprehensive briefs, those submitted on behalf of defendants alone comprising more than 350 printed pages. References herein made to the size

and nature of the record and the briefs doubtless will serve to indicate something of the extent and the character of the labors which have been placed upon the trial judge in reaching a decision in this cause.

Defendants' opening brief on exceptions to the Master's report discusses the main contentions advanced by them under three principal headings, to-wit, the Master's report, the patent in suit, and non-infringement. In this connection, while much emphasis is placed upon the criticism to the effect that the Master's report fails to set forth a complete detailed analysis of the evidence with appropriate references to the record, and although a great deal of space is devoted to excerpts from the testimony given by defendants' witnesses and to comments thereon, comparatively scant consideration is given to those portions of the record which lend support to the reasoning expounded and the deductions reached by the Master. For example, whereas approximately 143 pages of that brief are given over to quotations from the testimony of defendants' principal expert witness, Dr. Curtis, barely 9 pages are allotted for quotations from and discussion of the testimony given by plaintiffs' experts. Furthermore, important admissions elicited by cross-examination of some of defendants' witnesses either are ignored altogether or are not satisfactorily explained. Similarly, much of the evidence introduced on behalf of the plaintiffs tending to establish the validity of the patent in suit, including the proof offered to controvert the defenses of anticipation by prior use and by the prior art, as well as testimony proving infringement—references to which may be found in plaintiffs' Consolidated Topical Index of Highlights of the Record—all of this is apparently treated by the defense either with indifference, or as if the same did not require serious consideration. Obviously, such a method of approach in an argument upon exceptions to the Master's report can not be viewed as convincing.

█ Much of the evidence presented by the defense was directed toward proving that the patent in suit ·lacked definiteness and certainty, that it failed to teach grain size, or mixing, or pressing of the bisque materials, also that the practice followed by the plaintiffs did not conform to the practice taught by said patent. Likewise, defendants presented evidence designed to show that many years prior to the issuance ·of the patent in suit the process defined therein had been practiced in a certain plant at Tropico, California, also in the plant of the Inglewood .Brick Company, and also in the plant of the Wade Encaustic Tile & Pottery Co.; the defense also presented expert testimony to the effect that the disclosures set forth in earlier patents and in prior publications anticipated the patent in suit, and also introduced expert testimony to the effect that· the process practiced by the defendants differed materially from that defined by said patent and therefore did not infringe.

On the other hand, the record definitely discloses that the proof presented on behalf of plaintiffs controverted each of these propositions, and that such proof is most persuasive and convincing. Experts called on behalf of plaintiffs testified in substance that the patent in suit teaches a new process for making wall tile, that said patent discloses that its inventors had made a discovery as to temperature control, or at least set forth a solution of how temperature control in the manufacture of wall tile might be effected. Such expert testimony likewise pointed out what said patent teaches as to selection, use, apportionment and specified heating of certain materials when subjected to treatment by heat, and that by following the process defined in said patent there is produced a bisque which forms the basis for the production of the wall tile covered by the patent. All of this is established by the testimony of credible experts.

There is evidence very definitely tending to prove that by the use of the so-called Prouty process as defined by the· patent in suit tile has been produced on a commercial scale superior to the tile manufactured prior thereto and in the particulars claimed by said patent.

Likewise, plaintiffs introduced evidence of a persuasive character to the effect that one skilled in the art, by applying the process described in said patent, will be required to employ a particular method of treatment· of certain materials, and thereby will attain a certain result, namely, the manufacture of the product described in said patent.

[2] Furthermore there is evidence of a convincing quality showing that the authors of the patent in suit discovered new steps in the process of manufacturing tile, which new steps earlier practice had lacked and therefore had failed to produce the results attained by following the process described in said patent.

Although it is insisted with great emphasis that the earlier practices followed in the

three plants previously mentioned embodied the essential features of the process defined by the patent in suit, thereby allegedly anticipating said patent, the evidence upon which this proposition is advanced is not convincing. The further fact that none of these plants attained commercial success in this direction completely disposes of this contention. A fair appraisal of the evidence on this point would be to say that experiments were conducted at those plants with a view of discovering a process whereby wall tile of a high grade, consistent quality might be produced on a commercial scale, that some of these experiments gave some hint that if they should be pursued exhaustively the problem facing the industry might be solved, but that none of these efforts progressed beyond the experimental stage.

An examination of the record discloses that the evidence clearly supports findings to the effect that the inventors to whom the patent in suit was issued spent several years in research work and experimentation and that they expended a very substantial sum of money in their efforts to discover an economical and improved method or process for the manufacture of ceramic products, more particularly wall tile. The evidence further shows that findings are justified to the effect that as a result of their efforts these inventors succeeded in evolving a process by which wall tile was economically manufactured possessing a quality far superior to the tile which was being currently placed on the market by competitors. Likewise the proof merits entering findings to the effect that these inventors brought their experiments to a successful culmination sometime in 1923, that they applied for the patent in suit two years later—said patent being issued to them May 17, 1927—and that the defendants alone, of all those competitors who thereafter undertook to manufacture what proved to be virtually the same product, refused to recognize and concede the validity of the claims embraced by said patent.

Furthermore, the evidence shows that the inventors to whom the patent in suit was issued sold this patent and their plant for the sum of one million dollars to the plaintiff American Encaustic Tiling Company, and that before said sale was consummated, the process defined by the patent was subjected to and successfully met, over a period of many months, the most exacting requirements which the vendee could impose.

To borrow an appropriate comment from a most recent decision of our 9th Circuit Court of Appeals (Research Products v. Tretolite Co. et al., decided September 7, 1939, 106 F.2d 530, 532), "So great and immediate a success speaks strongly of invention, adding emphasis to the strong presumption of invention, raised by the issuance of the patent."

On the issue of infringement, we again note that in their discussion of this subject defense counsel devote much space to selected portions of the record which tend to support their views, and pay little heed to the evidence which justifies a contrary conclusion. That the experts called by the opposing litigants herein testified to divergent or contradictory views concerning the scientific problems involved, the record abundantly shows. Equally clear is it that the conclusions reached by the Special Master are sustained by testimony of credible experts.

The most charitable view that can be taken of this record from the standpoint of the defense would be to say that the hearing before the Master developed into a battle of expert witnesses, and that the evidence is conflicting upon each of the essential issues.

We conclude, therefore, that each and all of the defendants' exceptions to the Master's report should be denied, and that plaintiffs are entitled to findings and decree in conformity with the Master's report.